ROBINSON v. S. SAMUELS & CO.
(No. 247.)

(Court of Civil Appeals of Texas. Beaumont. June 22, 1917. Rehearing Denied June 27, 1917.)

1. SALES ☞417—ACTIONS—SUFFICIENCY OF EVIDENCE.
   In a buyer's action for breach of contract, evidence *held* sufficient to support special finding of jury that defendant agreed to ship good pickings.
   [Ed. Note.—For other cases, see Sales, Cent. Dig. § 1173.]

2. SALES ☞422 — ACTIONS — SPECIAL FINDINGS OF JURY—CONSISTENCY.
   In a buyer's action to recover damages for breach of contract for sale of cotton, special findings of jury that plaintiffs knew, at the time they paid defendant the price, that certain pickings which plaintiffs' agent had seen some time previously, found damaged, and reported to plaintiffs as damaged were included in the shipment, and also that plaintiffs did not know at that time that such pickings were damaged, are not inconsistent where jury could have found from other testimony that plaintiffs' agent told defendant to have them reworked, and plaintiffs did not know that this had not been done, and did not have notice of their real condition.
   [Ed. Note.—For other cases, see Sales, Cent. Dig. § 1204.]

3. SALES ☞176(6)—ACCEPTANCE BY BUYER—EFFECT OF PAYMENT—OPPORTUNITY FOR INSPECTION.
   In an action for breach of contract to ship good pickings examined by plaintiffs' agent in

defendant's warehouse, plaintiffs could recover, if they did not have notice of condition of goods at time they paid for them and had no opportunity of inspection, even though they knew that some of bales shipped were not those inspected at warehouse, but relied on defendant's representations that they were good, and rejected goods as soon as they knew their condition and demanded reimbursement.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 442.]

**4. SALES ⬅416(1)—ACTION FOR SELLER'S BREACH—EVIDENCE—RELEVANCY.**

In an action for breach of contract to ship good pickings, the exclusion of a telegram from plaintiffs to defendant offered for the purpose of showing that plaintiffs requested defendant to ship pickings under different designation entitling them to lower freight rate, is not error, where the telegram does not mention pickings, and may have referred to different goods.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1171.]

**5. SALES ⬅416(1)—ACTIONS—DAMAGES—EVIDENCE.**

In an action to recover for breach of contract to ship good pickings, the difference between contract price and market price of goods actually received at time and place same were received, evidence as to what plaintiffs had done with goods received was properly excluded, on plaintiffs' cross-examination, as irrelevant.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1171.]

**6. WITNESSES ⬅388(7) — CROSS-EXAMINATION—INCONSISTENT STATEMENTS—FOUNDATION.**

In an action for breach of contract to ship good pickings, court properly refused to permit defendant to cross-examine plaintiffs' agent as to alleged difference between statement made by witness and statement made in a letter to defendant from plaintiffs, where it is not shown that witness had anything to do with statement in plaintiffs' letter.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1239.]

**7. WITNESSES ⬅406—CONTRADICTION—COMPETENCY OF EVIDENCE.**

In an action for breach of contract to ship good pickings, examined by plaintiffs' agent in defendant's warehouse the court did not err in excluding testimony which would have contradicted testimony of plaintiffs' agent as to number and condition of bales of pickings where it consisted of hearsay statements, irrelevant and immaterial, and not made in presence of plaintiffs.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1276–1279.]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by S. Samuels & Co. against Joel Robinson and another. From a judgment in favor of plaintiffs, defendant Robinson appeals. Affirmed.

Atkinson, Graham & Atkinson, of Houston, for appellant. B. F. Louis, of Houston, for appellees.

BROOKE, J. On June 28, 1915, S. Samuels & Co. filed this suit in the Fifty-Fifth Judicial District Court of Harris county, Tex., against appellant, Joel Robinson, and also against the Houston & Texas Central Railway Company, to recover $1,318.67, as damages caused to the said appellees by reason of the fact that appellant had shipped to appellees 69 bales of damaged pickings not in compliance with a contract. After the evidence was closed, the court instructed the jury that there was no evidence against the railway showing any liability on its part, and a verdict was returned for the railway, under said instruction, and which instruction and verdict is not complained of by either appellant or appellees.

Appellees' petition set out that they had purchased 100 bales of good pickings from appellant to be shipped from Waco, Tex., to Houston, Tex.; that the same was shipped to them by appellant, and a draft was drawn on them by appellant for $2,258.59, being the value of said pickings at 4 cents per pound; that appellees had paid the draft on presentation; that after they paid said draft they examined said pickings and found that 69 bales of it were not good pickings, such as they had contracted for, but were what is known as paper stock, worth not over 1 cent per pound in the Houston market, and that the other 31 bales were in accordance with the contract. Appellees also allege that the shipment was made and the draft drawn by appellant at Waco, Tex., on May 13, 1915; that prior to the shipment, appellant had represented that the pickings he was shipping to appellees were good pickings, and that when appellees found they were not good pickings, they telegraphed to appellant, demanding reimbursement for the amount of said draft, and freight charges, and advising him that unless they were immediately reimbursed for the amount of said draft, which was $2,016.-60, and the freight charges of $241.99, that they would dispose of or take said shipment of 100 bales at its value on the market and hold said appellant for the balance. It was further alleged that they took said pickings at their market value; the said 69 bales being taken at 1 cent per pound, and appellees asked judgment for the said sum of $1,318.67.

In response to this petition, after a general denial, appellant answered, and denies that he misrepresented the quality of the pickings, and denies that appellees bought the same relying on any representations made by him, and charged that all the pickings which were shipped by appellant to appellees had been examined by Jake Pizer, agent for appellees, and had been approved by him, and that same were purchased by appellees on their own judgment and on the judgment of their said agent, after three careful examinations by said Pizer. Appellant further stated that he shipped to appellees the identical bales of pickings which had been examined and accepted by said Pizer; that there had been no change in the identity of said bales of pick-

ings; that said bales were taken direct from the warehouse of appellant, in which they had been examined by said agent, and delivered to the Houston & Texas Central Railway Company for shipment; that the railway company issued its bill of lading therefor, showing the condition of said shipment, and that it was in bad condition, and attached his draft for the agreed price of said pickings to said bill of lading, and the same was paid by appellees with full knowledge of all the matters contained in said bill of lading.

Appellees, by a first supplemental petition, denied the matters set up in said answer; denied that the identical pickings which were shown to and examined by the said Pizer, agent for appellees, save and except 31 bales, were shipped to appellees; denied that the 69 bales complained of were ever seen by said Pizer, agent for appellees; denied that the said cotton was in the warehouse at Waco when the said Pizer examined the said cotton in the warehouse, and charged that the said 69 bales had been shipped from other places than said warehouse. Appellees further charge that said 69 bales were only rotten stuff and paper stock, and were not taken to the railway as alleged, and were never in said warehouse; that the same should not be classed as pickings, good pickings or damaged pickings, and appellees denied that the notations on said bill of lading were sufficient to be notice to appellee of the worthless and rotten condition of said paper stock.

On the trial, and after hearing of the evidence, the cause was submitted to the jury on special issues, and a verdict returned thereon, and on motion of appellees a judgment was entered on said verdict in favor of appellees for the amount of said verdict and interest. A motion for new trial was made and overruled, notice of appeal given, and the cause is brought to this court for revision.

The charge of the court and the verdict of the jury was as follows:

Gentlemen of the jury: This case will be submitted to you upon special issues, and your verdict will be in the nature of answers to questions which will be propounded to you by the court herein. Upon your answers to these questions, the judgment of the court will be entered. You are instructed that the burden of proof is on the plaintiffs to prove by a preponderance of the testimony the material allegations in their petition, and unless you believe from the evidence that the plaintiffs have so proven their case, you will answer the issues herein submitted to you against them. You are charged that you are the sole and exclusive judges of the credibility of the witnesses and of the weight to be given to their testimony. You must receive and be governed by the instructions from the court as given you in this charge. The plaintiffs also sued the defendant Houston & Texas Central Railway Company, but inasmuch as in the opinion of the court the evidence does not show that the shipments in question were or could have been damaged while in said railroad's possession, and does not show any liability on the part of said company in any of the particulars alleged by plaintiffs, no issue as to such company is or will be submitted to you; the issues being confined to the questions in dispute between the plaintiffs and defendant Joel Robinson. In this case the plaintiffs, S. Samuels & Co., sue the defendant Joel Robinson, and allege that on the —— day of May, 1915, the defendant Joel Robinson sold to the plaintiffs 100 bales of good pickings and represented the 100 bales to be the same pickings as had previous thereto been seen by the agent of plaintiffs Jake Pizer, in the warehouse of defendant, in Waco, Tex., and that subsequently, upon arrival at Houston of the shipment made by the defendant Joel Robinson to plaintiffs, to fill such contract, it was found that there were only 31 bales of good pickings of the quality and grade as seen by plaintiffs' agent, Jake Pizer, and that the remaining 69 bales so shipped by defendant Joel Robinson were not good pickings, but were badly damaged and rotten, and known as paper stock. The defendant Joel Robinson alleges that he did ship to plaintiffs, and that plaintiffs received the identical 100 bales of pickings that had previously been seen by plaintiffs' agent, Jake Pizer, and denies that he misrepresented said pickings, or that plaintiffs purchased same relying on any representations of defendant.

Special issue No. 1: From the evidence, do you or do you not find that in the purchase and sale of the 100 bales of pickings between plaintiffs and defendant Joel Robinson that it was agreed that said defendant should ship to plaintiffs 100 bales of good pickings? In answer to this question you will say, "We find that such was agreed," or "We find that such was not agreed," according as you may find the facts to be.

"We find that such was agreed.

"J. G. Wells, Foreman Jury."

Special issue No. 2: From the evidence, do you or do you not find that in the purchase and sale of the 100 bales of pickings between plaintiffs and defendant Joel Robinson that it was agreed that said defendant should ship to plaintiffs 100 bales of pickings that plaintiffs' agent, Jake Pizer, had seen in defendant's warehouse in Waco, Tex.? In answer to this question you will say, "We find that such was agreed," or "We find that such was not agreed," according as you may find the facts to be.

"We find such was agreed,

"J. G. Wells, Foreman Jury."

Special issue No. 3: The plaintiffs admit that 31 bales of the shipment to them by defendant under their purchase involved herein were good pickings and the kind and quality as seen by their agent, Jake Pizer. Now from the evidence, do you or do you not find that the remaining 69 bales of such shipment delivered to plaintiffs were good pickings? In answer to this question you will say, "We find that they were," or "We find that they were not," as you may find the facts to be.

"We find that they were not.

"J. G. Wells, Foreman Jury."

Special issue No. 4: Were the remaining 69 bales of such shipment delivered to plaintiffs the identical pickings seen and inspected by plaintiffs' agent, Pizer, at Waco? You will let your answer be either, "We find that they were," or "We find that they were not," as you may find the facts to be.

"We find that they were not.

"J. G. Wells, Foreman Jury."

If in answer to the preceding questions you have stated that the 100 bales of pickings were the kind agreed on between plaintiffs and defendant, and that same were the identical 100 bales of pickings which were examined by plaintiffs' agent, Pizer, in Waco, then you need not answer the following question; but if you have answered either of the foregoing questions in the negative—that is to say, either that the 100 bales of pickings were not the kind and quality as agreed on between plaintiffs and the

defendant, or that same were not the 100 bales as seen and inspected by plaintiffs' agent, Pizer, at Waco—then state in answer to

Special issue No. 5: What damage, if any, have plaintiffs sustained by reason thereof? You will let your answer be either, "We find that plaintiffs were not damaged," or "We find that plaintiffs were damaged in the sum of $——," stating the amount that you may find from the evidence. In this connection you are instructed that the measure of damages, if any, would be the difference between the contract price and the market price in Houston of the goods actually received at the time and place same were received.

"We find that plaintiffs were damaged in the sum of $1,318.67.

"J. G. Wells, Foreman of Jury."

Special issue No. 6: Did plaintiffs at the time and prior to the time they paid the draft drawn against them by defendant have notice of the actual condition of said pickings, either from information derived from their agent, Pizer, or from defendant, or from any other source? You will let your answer be either, "They did," or "They did not," as you may find the facts to be.

"They did not.

"J. G. Wells, Foreman of Jury."

Special issue No. 7: How many bales of good pickings, and how many bales of damaged pickings, if any, were placed by the defendant on the cars at Waco for shipment to plaintiffs at Houston? You will let your answer be, "We find there were —— bales of good pickings, and —— bales of damaged pickings," inserting the number of each you may find from the evidence.

"We find there were 31 bales of good pickings and 69 bales of damaged pickings.

"J. G. Wells, Foreman Jury."

Special issue No. 8: Did the defendant Robinson make any false representations to the plaintiffs as to the character and quality of the 100 bales of pickings? You will let your answer be either, "He did," or "He did not," as you may find the facts to be.

"He did.    J. G. Wells, Foreman of Jury."

If you answer the last question in the negative, you need not answer the succeeding question; but if you answer the same in the affirmative, then state in answer to

Special issue No. 9: Did the plaintiffs Samuels & Co. rely on such statement? You will let your answer be either, "They did," or "They did not," as you may find the facts to be.

"They did.

"J. G. Wells, Foreman of Jury."

Special issue No. 10: Did the plaintiffs know at the time they paid the draft to defendant that the Taylor pickings were included in the shipment to them? You will answer "They did," or "They did not," as you may find the facts to be.

"They did.

"J. G. Wells, Foreman of Jury."

The first assignment is numbered 10, and is as follows:

"The court erred in overruling defendant's motion for a new trial, because the verdict of the jury was unsustained by the evidence, and against the weight and preponderance of the evidence, as to whether or not the 69 bales of cotton which were claimed by plaintiffs to be bad were the same bales that had been seen and inspected by Pizer, the agent of plaintiffs, who examined said cotton, when the evidence on the trial conclusively showed that Pizer had seen the cotton which was shipped by defendant to plaintiffs."

The allegation of the petition was as follows:

"That heretofore, to wit, on or about the 6th day of May, 1915, the defendant, Joel Robin-son represented to the plaintiffs and to the plaintiff S. Samuels of said firm that he had on hand for sale in his warehouse in the city of Waco, McLennan county, Tex., 100 bales of good cotton pickings, a commodity well known in the cotton trade, as being a marketable grade of cotton picked from bales of cotton without damage and without what is known as paper stock therein; that these representations had been made on or about said date and for several days prior thereto, over the phone in conversation with the said Samuels, plaintiff herein, the said S. Samuels then being in the city of Houston, Harris county, Tex.; and that on or about said date, the agent and representative of plaintiff was shown by defendant Joel Robinson 100 bales of pickings in his said warehouse in the city of Waco, which said pickings so shown to said agent, to wit, Jake Pizer, were good pickings, and of the kind and character represented by said defendant to the plaintiffs; and the said Joel Robinson also represented that the pickings contained in his said warehouse were of the kind and quality so seen by said representative."

Said petition further stated that in reliance upon the representations of appellant, the appellees purchased the said 100 bales of good pickings represented to be of the grade as represented, and were the identical bales as seen by the agent of the plaintiffs.

[1] The issue was whether or not the cotton was represented as being good pickings, and the pickings that Mr. Pizer had seen in the warehouse of the defendant at Waco, Tex. The court in its charge clearly defines the issue. The testimony will not be set out at length, but will be referred to briefly.

Samuels, the plaintiff who made the contract of purchase, testified that the purchase was made by telephone; Mr. Robinson being at the time in Waco, and he in Houston. The witness stated that Mr. Pizer had been to Waco and examined the pickings, and made a report that it was good pickings. Further he testified:

"I called and got Mr. Robinson over the phone, and I asked him about the 100 bales of pickings Mr. Pizer had seen; in other words, I bought from him the 100 bales of good pickings, and I even remarked, 'Be careful how you ship it; I want the good pickings Mr. Pizer has seen,' so he sold it to me for 4 cents a pound. He stated to me he was selling me good No. 1 pickings. He said those were the same pickings that Mr. Pizer had seen. I agreed to pay him 4 cents f. o. b. Waco for it. * * * Relying upon getting the pickings Mr. Pizer had seen, and Mr. Robinson had sold me, I paid the draft; relying upon his (Robinson's) representations. * * * I had a telephone conversation with Mr. Robinson at the time I bought that 100 bales of pickings from him; I think it was on May 6th, or the 5th. The substance of that telephone conversation was, he sold me 100 bales of pickings that Mr. Pizer had seen, and when I asked him is he going to ship me the pickings that Mr. Pizer has seen, and he said, 'I am going to ship you good pickings, the same bales Mr. Pizer has seen,' and he said, 'You just leave it to me,' and I left it to him. He says he is going to ship me good pickings; the same pickings which Mr. Pizer has seen, which were good pickings. I was relying on Mr. Pizer, and then on Robinson's guarantee in order to help me make the trade."

Mr. Pizer, the agent of S. Samuels & Co., stated that he examined the pickings

that Mr. Robinson had in his warehouse, and classed them up. He further testified:

"He had about 104 or 105 bales in his warehouse, and I called his attention to about 4 or 5 bales of paper stock in the lot; the balance were No. 1 and choice pickings. I called his attention to 4 or 5 bales of paper stock in the lot, and he told me not to look at those because they did not go; he was selling good pickings. I made three examinations of them; the pickings I saw were good No. 1 pickings. * * * I am positive, with reference to the number of bales in there, that there was not more than 104 or 105. In examining that cotton at Waco I did not see any pickings that I had previously seen at Taylor, Tex.; none of that class at all. In my judgment it would not have been possible in any manner for those Taylor pickings from the time I saw them there to have been among the 100 bales that I examined at Waco; those Taylor pickings were too damaged to ever make No. 1 pickings any more. I am positive of that. When Mr. Samuels was on a deal with him about a month later, I told him again Mr. Robinson had 100 bales of No. 1 pickings in his warehouse, and that is when he bought them."

Mrs. Katie Robinson, wife of the defendant, testified that Mr. Pizer was in Waco the 1st of April, and examined the cotton in the warehouse, and that part of it was the cotton shipped from Taylor, Tex.

Mr. Joel Robinson, the defendant, testified that the 40 bales that he had in Taylor, Tex., were shipped to Waco and placed in his warehouse, and that the Taylor pickings were at the same place when Mr. Pizer came into the warehouse and examined the pickings, and that he sampled them. He stated that in the conversation over the phone, in which the deal was made, "the Taylor pickings were mentioned in that conversation; I told him the Taylor pickings included. I just made that reduction at the time because I was figuring in the Taylor pickings." On cross-examination the defendant Mr. Robinson stated:

"I told Mr. Pizer when he was there that I had 200 bales in all, and could only sell him 150 bales; that I couldn't sell him those 50 bales because they had to be worked over; that is what I told Mr. Pizer. Mr. Pizer seen the 50 bales in Taylor, and he examined them in my warehouse in Waco. I was not offering to sell them to him. He examined them anyway. I think he took samples from those, too. I am not positive about that. I thought I had 200 bales in my warehouse at that time, but I had 173. I saw that sample of stuff that Mr. Samuels had there; that paper stock or junk. I didn't ship such stuff as that. I didn't see it if I did. I wouldn't have shipped stuff like that for pickings; no, sir; I would not. I shipped just what Mr. Samuels bought. I am satisfied I didn't see any such stuff as was shown before this jury. If I had known that stuff was in that lot, if he had bought it, I would have shipped it in compliance with his contract. He bought the 40 bales; no, sir; I never seen such stuff as that. That is pretty bad stuff. I have seen pretty bad stuff in my life. * * * I never sold Samuels good pickings. I think I would not have shipped it to him under a contract of good pickings. I don't know I would not. If he had bought it, I would. If he had bought good pickings, I would not have shipped him that 40 bales. I don't know if Mr. Pizer saw any stuff like that in my warehouse or not. I just turned over the

196 S.W.—57

whole warehouse to him and furnished him a negro. I didn't see it. I didn't see a piece of stuff like that in my warehouse. I don't see no such stuff as that in the 40 bales."

He further testified:

"The Taylor pickings were good pickings when I bought it. I bought it in July from the mayor of the town. When Mr. Pizer was there it was wet. They had had it out in the rain. The pickings was good, but it had to be worked over. Mr. Pizer told me to take it to Waco and work it over. He even helped me. I told him I was going to take it to Taylor and work it over; that is what he advised me. I said I would do it. I knew it had to be worked over to save them; to make them good pickings."

From the testimony it is clear that the issue was sharply drawn, and that there was a sharp conflict, both as to the terms of the contract, and as to the pickings which Mr. Pizer, the agent of plaintiffs had seen in the warehouse at Waco. The answer of the jury to the special issue resolved the questions in favor of the plaintiffs.

We are of opinion, after careful examination of the testimony, as reflected by this record, that the verdict of the jury, having evidence to sustain it, and the evidence being sufficient, in our opinion, to establish that the contract as found by the jury covered 100 bales of good pickings, cannot be disturbed by this court. It would be a useless consumption of time and space to attempt to set out the testimony of the various witnesses, and the inferences to be drawn therefrom, and, as before stated, we have reached the conclusion that there is testimony in the record to sustain the conclusion reached by the jury. Perhaps it may not be conclusive, but, to say the least, it is sufficient to raise the issue that has been determined by the jury in favor of appellees. We find no merit in the assignment, and the same is overruled.

[2] The fourteenth and fifteenth assignments of error, as presented by the brief of appellant, are as follows:

(a) "The court erred to the prejudice of this defendant in rendering judgment against this defendant upon the verdict of the jury for the reason that the answers of said jury to the issues submitted to it by the court are contradictory, and at variance in this: The court in special issue No. 6 submitted the question as to whether or not the plaintiffs at the time they paid defendant's draft knew that the Taylor pickings were included in the shipment. To which issue the jury answered that plaintiffs did know such fact."

(b) "The court erred in rendering judgment in favor of plaintiffs on the verdict of the jury, and especially in rendering said judgment on special issue No. 10, because the testimony of the witness Pizer showed that he had seen the Taylor pickings, and knew they were damaged, and so informed his principal, the plaintiff herein, and the testimony of the witness S. Samuels showed that he knew the Taylor pickings amounting to 40 bales were damaged, and all of the testimony showed that the Taylor pickings were included in said shipment, so that the jury in one place finds that at the time the draft was paid, plaintiffs did not know that any of said cotton was damaged, and in another place finds that plaintiffs did know that said cotton was damaged at the time the draft

was paid, which answers are contradictory, and irreconcilable, as shown in bill of exception No. 5."

It is contended that the findings of the jury under special issues Nos. 6 and 10 present no contradiction, and are in no wise irreconcilable; in that, plaintiffs may have known, as found by the jury, at the time they paid the draft of the defendant that the Taylor pickings were included in the shipment to them, and yet not have had notice, as the jury found, of the actual condition of such shipment, either from information derived from their agent Pizer, or from the defendant, or from any other source, and that inasmuch as the plaintiffs purchased from the defendant 100 bales of good pickings, to be the same pickings that were examined by their agent Pizer, in defendant's warehouse at Waco, it was wholly immaterial whether they knew at the time they paid the draft that the Taylor pickings were included in the shipment to them or not. The contract did not expressly exclude Taylor pickings, and that if Taylor pickings complied with the kind and quality covered by the contract, the defendant would have had a right to ship the same.

The witness Pizer testified:

That he saw these pickings in Taylor, Tex., some time in December, 1914, and that at that time they were in a wet and damaged condition. "They were not No. 1 pickings. When I left Taylor those pickings were at the compress. I didn't have any more to do with them after I examined them at that time."

He further states:

That in his judgment it would not have been possible for the Taylor pickings to have been among the 100 bales he examined at Waco, for they were too far damaged at that time to have ever made No. 1 pickings any more. "Mr. Robinson said there that day they were No. 1 pickings; said, 'That water don't go in but a few inches,' but I said, 'That hurts them, unless you break the bales open and dry them out and rebale them'; and he said, 'I think I will do that; I will go to reworking them.' That is as far as I talked to him about it. He didn't go down to the depot and make out a bill of lading and get the freight agent to check them out. He left me and went up to buy some loose there. I don't know whether he shipped them out that day or not. That is the last I heard. There was nothing said about them being shipped to Waco. He said he was going to rework them."

Samuels testified:

That he did instruct his man, Pizer, to call upon the defendant about the date of the letter in evidence, to wit, November 29, 1914, and that his man told him that Robinson had a lot of pickings at Taylor which would turn to paper stock, if it stayed there much longer. "He didn't tell me it was wet. If it stays out in the weather three or four months, it will turn to paper stock. I don't think they were ready to turn into paper stock at the time he saw them, but they would if they stayed long enough. I didn't deal with Mr. Robinson about the Taylor pickings at that time, and no other time."

He stated further that:

The Taylor pickings would have to be "reworked to make pickings at the time my man seen them." "Speaking about working pickings, it depends on what it is whether it is necessary to rework No. 1 pickings. This No. 1 pickings right here by me has been worked."

He stated that the Taylor pickings were not mentioned to him over the phone at the time he made the purchase. He further stated that Mr. Robinson guaranteed the pickings "to be good pickings."

From the testimony it will be seen that the Taylor pickings were examined at Taylor, Tex., in November, 1914, and at the time they were wet, and Pizer, agent of the plaintiffs, advised the defendant to rework the pickings; that the defendant thought they were good pickings. Therefore the findings of the jury would be consistent if it is remembered that from the testimony the jury could have reached the conclusion that the Taylor pickings had been moved to Waco and reworked, and that, although the plaintiff knew that the Taylor pickings were included, they did not know that they had not been reworked, or that their condition was such as to be worthless and rotten paper stock; and even with knowledge that the Taylor pickings were included, plaintiffs did not have notice of the real condition of the shipment. We believe that plaintiffs had a right to rely upon the contract, and that the pickings were of the kind and quality which he had purchased. The suit in this case was predicated only upon the difference in the contract price and the market value of the commodity delivered.

A careful examination of the entire record convinces us that there is no such conflict in the findings as would cause a reversal of this case. The assignments are overruled.

[3] By the sixteenth assignment, complaint is made that the court erred to the prejudice of appellant in rendering judgment against appellant for damages based upon 69 bales of damaged pickings for the reason that the finding of the jury in answer to special issue No. 10 shows that at the time the draft was paid by plaintiffs, they knew that the 40 bales of Taylor pickings which were damaged were included in said shipment, and therefore plaintiffs, if entitled to recover at all, are only entitled to recover damages based upon 29 bales of damaged cotton, all of which matters were called to the attention of the court in the motion for a new trial.

The proposition is:

"If appellant was guilty of fraud in shipping cotton that was not up to the contract, such as the Taylor pickings, and if before they paid the draft appellees knew that said cotton had been shipped to them, which was not up to contract, and if, knowing such fact, appellees paid the draft, then they have no cause of action for damages against appellant, and cannot recover anything by reason of having purchased the Taylor pickings."

On the contrary, it is urged that the jury having found that the agreement between the plaintiffs and the defendant was that the defendant should ship the plaintiffs 100 bales of good pickings, and should ship the 100 bales that plaintiffs' agent Pizer had seen in the defendant's warehouse at Waco, Tex.,

the plaintiffs had a right to rely upon the performance of the contract by defendant, and, even with the knowledge that the Taylor pickings were included in the shipment, at the time they paid the draft, they had the right to assume that the Taylor pickings would conform to the terms of the contract, and that the evidence shows that as soon as the plaintiffs ascertained the condition of the shipment, they refused to accept the same as being in compliance with the contract, and demanded reimbursement; and the fact that the plaintiffs paid the draft in reliance upon the defendant's representations, without having an opportunity to examine the shipment, would not deprive them of the right to reject the same as soon as the shipment was examined and not found in accordance with the contract and representations, and to subsequently, upon defendant's refusal to repay the amount paid, dispose of said shipment and hold defendant for the damage.

There were no exceptions to the charge of the court. Under special issues Nos. 1, 2, 3, and 4, the jury found that appellant agreed to ship plaintiffs 100 bales of good pickings, and the pickings that plaintiffs' agent J. Pizer had seen in appellant's warehouse at Waco, Tex., and that 69 bales of the cotton shipped were neither good pickings, nor the pickings seen or so inspected by said agent at Waco. In answer to special issue No. 6, the jury found that plaintiffs did not have notice from any source of the condition of the pickings at the time the draft was paid, and in answer to special issues 8 and 9 found that defendant made certain representations to the plaintiffs as to the character and quality of the 100 bales of pickings, and that the plaintiffs relied upon the same.

From the evidence it appears that the draft introduced was paid on the 14th day of May, 1915; that the 100 bales were shipped on May 13, 1915; and that the shipment arrived in Houston about May 20, 1915, indicating that the draft was paid before the shipment could have been examined. The plaintiffs wired the defendant by telegram on May 20, 1915, as follows:

"Hundred bales pickings arrived. They are not what our man examined there. We are holding same subject to your order. You must reimburse us for amount you drew on us and freight charges. Particulars mailed."

On June 7th plaintiffs wrote the defendant, again demanding reimbursement.

As heretofore stated, the Taylor pickings had been examined by Pizer in November or December, 1914, and from that time until the draft was paid, it does not appear that any further examination was made by him, or that he knew of their condition. It is evident that the Taylor pickings may have undergone changes from the time Pizer saw them before the payment of the draft. It is, however, plain that as soon as plaintiffs learned of the condition of the shipment, they notified defendant by telegram, and defendant was asked to reimburse the plaintiffs, and upon his refusal suit was filed. No profit was asked, and therefore defendant could sustain no loss, as he gets the value of the product. A careful examination will show that there is no merit in the assignment, and therefore the same is overruled.

[4] The first and second assignments of error are as follows:

(a) "The court erred to the prejudice of this defendant in excluding from the evidence the telegram of plaintiffs to the defendant, of date May 6, 1915, upon objection of counsel for plaintiffs as shown by bill of exception No. 1."

(b) "The court further erred in excluding said telegram for the reason that said telegram related to the matters in controversy, tended to sustain defendant's contentions, and further showed that plaintiffs requested of this defendant to make a false bill of lading in having his cotton shipped as linters, showed generally that he was not a witness whose testimony should be credited by the jury, as it constituted a part of the transaction of which plaintiffs now complain in bill of exceptions No. 1."

The bill is as follows:

"Be it remembered that, on the trial of the above entitled and numbered cause, defendant Joel Robinson offered in evidence the following telegram: 'Houston, Texas, May 6, 1915. Joel Robinson. Letter rec'd. If you will wire lowest price, landed Houston, may be able to trade with you. You can ship as linters. [Signed] S. Samuels & Co.' And when said telegram was offered in evidence, objection was made to its introduction by counsel for plaintiffs on the ground that the same was irrelevant and immaterial, which objection was sustained by the court and said telegram was excluded, to which ruling of the court the said defendant then and there excepted, and here and now tenders his bill of exceptions, and asks that the same be allowed."

We have tried faithfully to find relevancy in the proposed testimony, but have utterly failed to do so. It seems that the view of appellant is that the telegram was an attempt to perpetrate fraud on the railroad by Samuels & Co., because linters are entitled to a lower freight rate than pickings, and this telegram shows that appellees were ready to engage in any fraud which might be profitable to them. No attempt is made to show that there was any relation whatever between the contract made over the phone by the parties and to the telegram offered in evidence. There is, to say the least of it, in any view that may be taken, no relevancy and no materiality to the matters in controversy here. The assignments are overruled.

[5] As shown by the brief of appellant, the third and fourth assignments of error complain as follows:

(a) "The court erred to the prejudice of this defendant in refusing to permit counsel for defendant to cross-examine plaintiff S. Samuels as to what said Samuels had done with the paper stock or cotton in question, for the reason that the said Samuels had testified that said paper stock or cotton was worth only one cent a pound, and this defendant had the right to cross-examine him fully as to all matters which would throw any light on the value of said cotton, and the court erred in refusing

this defendant the right to cross-examine said plaintiff, as shown by bill of exceptions No. 2."

(b) "The court further erred in refusing this defendant the right to cross-examine said plaintiff as to what he had done with the cotton which he claims was damaged after he had expressed his opinion that it was worth only one cent a pound, because this defendant had the right under the law to thoroughly search the memory and conscience of plaintiff to see whether he was telling the truth about the value of said cotton. Said plaintiff would have answered that he did not know anything about what he had done with said cotton, and would have concealed from the court and jury all information as to what he had received from said cotton, and his testimony would have shown that he was unworthy of belief."

The bill of exceptions is as follows:

"Be it remembered that, on the trial of the above entitled and numbered cause, when plaintiff S. Samuels was on the witness stand, counsel for defendant on cross-examination asked him, the said Samuels, what he did with the paper stock he had received from Robinson. The plaintiff by counsel objected to any answer being made by plaintiff to said question on the ground that said question was irrelevant and immaterial, which objection was sustained by the court, and the said plaintiff S. Samuels was not permitted to answer said question, to which action of the court said defendant by counsel then and there in open court excepted, and here and now tenders his bill of exception, and asks that the same be allowed."

No attempt is made to show what was expected to be proven, and in our opinion the market value would not be dependent upon what disposition the plaintiffs may have made of the shipment. The issue submitted in connection with the court's charge was: "What damage, if any, have plaintiffs sustained by reason thereof?" In this connection the jury was instructed as follows:

"In this connection, you are instructed that the measure of damages, if any, would be the difference between the contract price and the market price in Houston of the goods actually received at the time and place same were received."

No exceptions were taken to the charge of the court, and we are unable to see how the issue could be in any wise affected by what was done with the shipment in question. If the plaintiffs had sold the cotton and received less than the market value therefor, it would have been inadmissible, for the defendant's liability would not have been thereby increased. The market value of the stuff, therefore, was in no wise dependent on what became of the stuff itself. We find no merit in the assignments, and they are therefore overruled.

[6] Complaint was made by the fifth assignment that there was error in the court sustaining the objection of plaintiff's counsel in cross-examination of the witness Pizer as to the matters contained in bill of exception as follows:

"Be it remembered that, on the trial of the above cause when Pizer, witness for plaintiffs, was on the stand and on cross-examination defendant by counsel called his attention to the letter from plaintiffs to defendant, dated April 17, 1915, which letter stated that a great many of this defendant's bales of cotton would have

to be reworked, and when the witness Pizer had testified that only 4 or 5 bales needed to be reworked, he was asked the question how he explained the difference between his statement and the statement in the said letter from S. Samuels & Co., to defendant, the questions and answers thereto were objected to by plaintiffs as being irrelevant and immaterial, and further that this witness could not tell what was in the mind or contemplation of Samuels & Co., which objections were sustained by the court and said evidence excluded, to which ruling of the court defendant by counsel at the time excepted, and here and now tenders his bill of exception, and asks that the same be allowed."

Complaint is made because of an alleged difference between a statement made by the witness and statement made in the letter, not from witness, but from plaintiffs. No connection is shown, and neither was it shown that the witness knew or had any knowledge or had anything to do with the statement of plaintiffs in their letter. It was clearly inadmissible. The assignment is overruled.

[7] The seventh and eighth assignments of error are as follows:

(a) "The court erred to the prejudice of this defendant in sustaining the objection of counsel for plaintiffs to the testimony of the witness Baker Hoskins, in answer to the fifth, sixth, seventh, and eighth direct interrogatories for the reason that said evidence tended to show the number of bales of cotton in defendant's warehouse at Waco, and the condition thereof, prior to, at, and subsequent to the time said cotton was examined by said Pizer, and because said answer tended to contradict the testimony of said Pizer, and the exclusion of said answer was prejudicial to this defendant."

(b) "The court erred to the prejudice of this defendant in sustaining the objection of the counsel for plaintiffs to the testimony of the witness Baker Hoskins in answer to the third cross-interrogatory propounded to him, for the reason that the same tends to contradict the testimony of the witness Pizer as to the number of bales in defendant's warehouse and the condition thereof, at, prior to, and subsequent to the time same was examined by the witness Pizer, and for the reason that said testimony tends to sustain the testimony of the defendant Robinson that plaintiffs paid a lower price for the cotton bought from this defendant than did the witness Hoskins, because of the fact that the cotton sold to plaintiffs was sold at a lower price than sold to the witness Hoskins."

The bill shows the following:

"The following is the fifth interrogatory and the answer thereto: Interrogatory: State whether Mr. Robinson told you anything about any of the cotton being shipped in from any other town, and, if so, what town did he say it had been shipped from, and how many bales did he say, if any, had been shipped. Answer: Mr. Robinson told me that some of this cotton had been shipped in from Taylor, and S. Samuels & Co.'s man had been there and figured on buying the lot of cotton. I do not remember what number of bales he told me had been shipped in from Taylor.

"The following is the sixth interrogatory and the answer thereto: Interrogatory: If you bought any of said cotton, for whom did you buy it? Answer: I bought 100 bales of the cotton from Joel Robinson, the same to be No. 1 pickings.

"The following is the seventh interrogatory and the answer thereto: Interrogatory: If Joel Robinson said anything as to who he was going

to sell the balance of said cotton, then state the name of the party he proposed to sell it to. Answer: He told me before I bought any of the cotton from him that he had been figuring on selling the whole lot to S. Samuels & Co., and after I had bought the 100 bales he told me that he was going to sell a certain number of bales to S. Samuels & Co., and that if I did not need the whole 100 bales at this time that he would like to reserve 31 bales so that he could complete the number of bales that he had sold to Samuels & Co., which I did. I received at this time 69 bales, and he afterwards delivered the other 31 to me.

"The following is the eighth interrogatory and the answer thereto: Interrogatory: How many bales of cotton did you take from said warehouse? Answer: I took 69 bales from the warehouse at this time.

"The following is the third cross-interrogatory and answer thereto: Interrogatory: What price did you pay Joel Robinson for the 69 bales delivered to you? Answer: I think that it was 4½ cents per pound, but am not positive of this; it might have been 5½ cents per pound; I could look up my records and tell exactly."

All of this testimony, as shown by the bill, was hearsay, irrelevant, and immaterial, and not made in the presence of the plaintiffs. There was no mistake on the part of the court in sustaining the objection. The assignments are overruled.

The last proposition seems to be a blanket proposition, and says that the evidence, if not conclusively to the effect that the defendant agreed to sell the plaintiffs 100 bales of good pickings, certainly raises the issue of fact for determination by the jury.

We have examined carefully this entire record. There is no doubt in our minds that the appellant has received a fair and impartial trial. The matters were presented to the jury, and have been found against the contention of appellant. We have heretofore stated that the answers of the jury were consistent, easily reconcilable, and there was no error on the part of the court in entering the judgment upon the verdict of the jury, and, therefore, the record reflecting no material error such as would warrant this court in reversing this cause, the judgment of the lower court is in all things affirmed. It is so ordered.